# United States Court of Appeals for the Federal Circuit

---

**CONTENT EXTRACTION AND TRANSMISSION LLC,**
*Plaintiff-Appellant,*

v.

**WELLS FARGO BANK, NATIONAL ASSOCIATION,**
*Defendant-Appellee,*

AND

**THE PNC FINANCIAL SERVICES GROUP, INC. AND PNC BANK, N.A.,**
*Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - -

**DIEBOLD, INCORPORATED,**
*Plaintiff-Counterdefendant-Cross Appellant,*

v.

**CONTENT EXTRACTION AND TRANSMISSION LLC,**
*Defendant-Counterplaintiff-Appellant,*

AND

**MITCHELL MEDINA, CATHERINE ELIAS, AND JEAN-MARC ZIMMERMAN,**
*Defendants,*

**AND**

**JOHN DOE COMPANIES 1-100, JOHN DOE COMPANIES 1-99, TD BANK GROUP, AND TD BANK, N.A.**
*Third-Party Defendants.*

————————————

2013-1588, -1589,
2014-1112, -1687

————————————

Appeals from the United States District Court for the District of New Jersey in Nos. 12-CV-2501, 12-CV-6960, and 12-CV-7640, Judge Michael A. Shipp.

————————————

Decided:  December 23, 2014

————————————

ANATOLY S. WEISER, Zimmerman & Weiser LLP, of Westfield, New Jersey, argued for plaintiff-appellant Content Extraction and Transmission LLC.  With him on the brief was JEAN-MARC ZIMMERMAN.

FREDERICK L. WHITMER, Kilpatrick, Townsend & Stockton LLP, of New York, New York, argued for defendant-appellee Wells Fargo Bank, National Association. Of counsel on the brief for defendant-appellees The PNC Financial Services Group, Inc., et al. was NOAM J. KRITZER, Bakos & Kritzer of Florham Park, New Jersey.

ROY H. WEPNER, Lerner, David, Littenberg, Krumholz & Mentlik, LLP, of Westfield, New Jersey, argued for plaintiff-counterdefendant-cross appellant Diebold, Incorporated.  With him on the brief were ARNOLD I. RADY and BRIAN D. HILL.

————————————

Before DYK, TARANTO, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Content Extraction and Transmission LLC and its principals (collectively, CET) appeal from the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), in which the United States District Court for the District of New Jersey held that the claims of CET's asserted patents are invalid as patent-ineligible under 35 U.S.C. § 101. Cross-appellant Diebold, Inc. (Diebold) appeals from the district court's dismissal of its tortious interference and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against CET in a related action. We affirm the district court's dismissal of both CET's and Diebold's claims.

## BACKGROUND

CET owns U.S. Patent Nos. 5,258,855 ('855 patent), 5,369,508 ('508 patent), 5,625,465 ('465 patent), and 5,768,416 ('416 patent) (collectively, the asserted patents). The '508, '465, and '416 patents are continuations of the '855 patent, and share substantially the same specification. The four patents contain a total of 242 claims. The claims generally recite a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory. This method can be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory.

Claim 1 of the '855 patent recites:

A method of processing information from a diversity of types of hard copy documents, said method comprising the steps of:

(a) receiving output representing a diversity of types of hard copy documents from an automated digitizing unit and storing information from said diversity of types of hard copy documents into a memory, said information not fixed from one document to the next, said receiving step not preceded by scanning, via said automated digitizing unit, of a separate document containing format requirements;

(b) recognizing portions of said hard copy documents corresponding to a first data field; and

(c) storing information from said portions of said hard copy documents corresponding to said first data field into memory locations for said first data field.

'855 patent, 16:19–34.

In April and November 2012 respectively, CET filed infringement actions against appellees Wells Fargo Bank, N.A. (Wells Fargo) and The PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively, PNC), alleging that they were using ATMs with check deposit software that infringed its patents. In December 2012, Diebold, the manufacturer of Wells Fargo's and PNC's ATMs, filed an action against CET seeking 1) a declaratory judgment that its ATMs did not infringe CET's asserted patents and that CET's patents were invalid, and 2) injunctive and monetary relief for tortious interference and violations of the RICO Act arising from CET's act of

filing allegedly baseless infringement suits against Wells Fargo, PNC, and other Diebold customers. CET counterclaimed against Diebold by asserting direct and indirect infringement of its patents. The district court eventually consolidated the three inter-related actions between CET and Wells Fargo, PNC, and Diebold for pretrial purposes.

Relevant here, PNC subsequently moved to dismiss CET's complaint in its entirety pursuant to FRCP 12(b)(6), on the ground that each claim of the asserted patents was invalid as patent-ineligible under 35 U.S.C. § 101. PNC focused its arguments on two claims: claim 1 of the '855 patent and claim 1 of the '416 patent. PNC contended that these two claims were representative, and that none of the other claims included anything more than minor changes in format or phrasing. In its opposition to PNC's motion, CET did not challenge PNC's characterization of claim 1 of the '855 patent or claim 1 of the '416 patent as representative, instead focusing its arguments on defending those two claims.

The district court agreed that all CET's asserted claims were invalid as patent-ineligible under § 101, granted PNC's motion, and dismissed CET's complaints against both PNC and Wells Fargo. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, No. 12-6960, 2013 WL 3964909, at *5, *14 (D.N.J. July 31, 2013) (*CET*). In light of this holding, the district court also dismissed Diebold's request for a declaratory judgment of invalidity and noninfringement as moot. Lastly, the district court dismissed Diebold's RICO and tortious interference claims against CET, concluding that CET's act of filing lawsuits against Diebold's customers—such as Wells Fargo and PNC—was protected under the *Noerr-Pennington* doctrine, as established in *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). CET appealed and Diebold cross-

appealed the district court's order dismissing the parties' complaints. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review a district court's dismissal for failure to state a claim under the law of the regional circuit. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). The Third Circuit reviews challenges to a dismissal for failure to state a claim under FRCP 12(b)(6) *de novo*. *Sands v. McCormick*, 502 F.3d 263, 267 (3d Cir. 2007). We review the district court's determination of patent eligibility under § 101 *de novo*. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

## DISCUSSION

An invention is patent-eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The Supreme Court, however, has long interpreted § 101 and its statutory predecessors to contain an implicit exception: "laws of nature, natural phenomena, and abstract ideas" are not patentable. *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S. Ct. 2347, 2354 (2014). We focus here on whether the claims of the asserted patents fall within the excluded category of abstract ideas.

The Supreme Court's two-step framework, described in *Mayo* and *Alice*, guides our analysis. *Id.* at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. __, 132 S. Ct. 1289, 1296–97 (2012)). We first determine whether a claim is "directed to" a patent-ineligible abstract idea. If so, we then consider the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the

nature of the claim into a patent-eligible application of the abstract idea. *Id.* This is the search for an "inventive concept"—something sufficient to ensure that the claim amounts to "significantly more" than the abstract idea itself. *Id.*

The Supreme Court has not "delimit[ed] the precise contours of the 'abstract ideas' category." *Id.* at 2357. We know, however, that although there is no categorical business-method exception, *Bilski v. Kappos*, 561 U.S. 593, 606, 608 (2010), claims directed to the mere formation and manipulation of economic relations may involve an abstract idea. *See Alice*, 134 S. Ct. at 2356–57. We have also applied the Supreme Court's guidance to identify claims directed to the performance of certain financial transactions as involving abstract ideas. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (creating a transaction performance guaranty for a commercial transaction on computer networks such as the Internet); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 (Fed. Cir. 2013) (generating rule-based tasks for processing an insurance claim); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (managing a stable value protected life insurance policy); *Dealertrack*, 674 F.3d at 1333 (processing loan information through a clearinghouse).

Applying *Mayo/Alice* step one, we agree with the district court that the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory. The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions. And banks have, for some time, reviewed checks, recognized relevant data such as the amount,

account number, and identity of account holder, and stored that information in their records.

CET attempts to distinguish its claims from those found to be abstract in *Alice* and other cases by showing that its claims require not only a computer but also an additional machine—a scanner.[1]  Appellant's Br. 31–32. CET argues that its claims are not drawn to an abstract idea because human minds are unable to process and recognize the stream of bits output by a scanner.  *Id.* at 29.  However, the claims in *Alice* also required a computer that processed streams of bits, but nonetheless were found to be abstract.  *See* 134 S. Ct. at 2358.  Similar to how the computer-implemented claims in *Alice* were directed to "the concept of intermediated settlement," *id.* at 2356, and the claims in *Dealertrack* were directed to the concept of "processing information through a clearinghouse," 674 F.3d at 1333, CET's claims are drawn to the basic concept of data recognition and storage.

For the second step of our analysis, we determine whether the limitations present in the claims represent a patent-eligible application of the abstract idea.  *Alice*, 134 S. Ct. at 2357.  For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."  *Id.* at 2359 (quoting *Mayo*, 132 S. Ct. at 1294 (internal quotation

---

1    We note that some of CET's claims do not explicitly require the use of either a computer or scanner, and refer instead to a generic "application unit" and "automated digitizing unit."  See, e.g., '855 patent, 18:52–19:3. We assume for purposes of PNC's motion to dismiss, however, that these claims require the presence of both a computer and a scanner.

marks and brackets omitted)). Further, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

Applying *Mayo/Alice* step two, we agree with the district court that the asserted patents contain no limitations—either individually or as an ordered combination—that transform the claims into a patent-eligible application. CET conceded at oral argument that the use of a scanner or other digitizing device to extract data from a document was well-known at the time of filing, as was the ability of computers to translate the shapes on a physical page into typeface characters. Oral Arg. at 3:35–3:55; 16:12–16:17, *available at* http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2013-1588.mp3. CET's claims merely recite the use of this existing scanning and processing technology to recognize and store data from specific data fields such as amounts, addresses, and dates. *See id.* There is no "inventive concept" in CET's use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry. *See Alice*, 134 S. Ct. at 2359. At most, CET's claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context. *See Alice*, 134 S. Ct. at 2358; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715–16 (Fed Cir. 2014); *buySAFE*, 765 F.3d at 1355.

CET next argues that the failure of PNC or the district court to individually address every one of its claims is inconsistent with the statutory presumption of validity that requires proving the invalidity of each claim by clear and convincing evidence. *See Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002). The district court, however, correctly determined that address-

ing each claim of the asserted patents was unnecessary. After conducting its own analysis, the district court determined that PNC is correct that claim 1 of the '855 patent and claim 1 of the '416 patent are representative, because all the claims are "substantially similar and linked to the same abstract idea." *CET*, 2013 WL 3964909, at \*5 (citing *Bilski*, 561 U.S. at 612). Moreover, CET never asserted in its opposition to PNC's motion that the district court should have differentiated any claim from those identified as representative by PNC. Nor did CET identify any other claims as purportedly containing an inventive concept. If CET disagreed with PNC's or the district court's assessment, CET could have identified claims in its opposition brief that it believed would not be fairly represented by claims 1 of the '855 and '416 patents for purposes of PNC's § 101 challenge. Regardless, we have reviewed all the claims of CET's asserted patents, and agree with the district court that, for the purposes of PNC's § 101 challenge, 1) the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea, and 2) claim 1 of the '855 patent and claim 1 of the '416 patent are representative.

CET argues on appeal that certain dependent claims recite additional steps, such as extracting and detecting specific data fields, repeating some steps, and storing data as images or text, rendering those claims patent-eligible. Appellant's Br. 40–41. For instance, CET notes that dependent claim 44 of the '416 patent additionally requires: "defining a set of symbols which designate fields of information required by an application program; and detecting the presence of a particular one of said defined set of symbols on a hard copy document and extracting a field of information required by an application program based on said detecting." *Id.* This limitation merely describes generic optical character recognition technology, which CET conceded was a routine function of scanning

technology at the time the claims were filed. Oral Arg. at 3:35–3:55, 16:12–16:17, *available at* http://oralarguments. cafc.uscourts.gov/default.aspx?fl=2013-1588.mp3. Indeed, all of the additional limitations in the claims cited in CET's appeal brief recite well-known, routine, and conventional functions of scanners and computers. Thus, while these claims may have a narrower scope than the representative claims, no claim contains an "inventive concept" that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea.

Finally, CET contends that the district court erred by declaring its claims patent-ineligible under § 101 at the pleading stage without first construing the claims or allowing the parties to conduct fact discovery and submit opinions from experts supporting their claim construction positions. Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101. *See Ultramercial,* 772 F.3d at 714–15; *Bancorp,* 687 F.3d at 1273–74. The district court construed the terms identified by CET "in the manner most favorable to [CET]," necessarily assuming that all of CET's claims required a machine, even though several claims do not expressly recite any hardware structures. *See supra* note 1; *CET,* 2013 WL 3964909, at *12. Nonetheless, the district court determined the claims of the asserted patents were patent-ineligible. Likewise, we conclude that even when construed in a manner most favorable to CET, none of CET's claims amount to "significantly more" than the abstract idea of extracting and storing data from hard copy documents using generic scanning and processing technology. The district court's resolution of PNC's motion to dismiss at the pleading stage was therefore proper.

DIEBOLD'S CROSS-APPEAL

We turn next to Diebold's appeal from the district court's dismissal of its tortious interference and RICO violation claims against CET. Diebold's claims all arise from the following predicate act: the filing of allegedly frivolous infringement suits by CET against Wells Fargo, PNC, and other Diebold customers in an attempt to obtain nuisance settlements from them. The district court, however, concluded that the *Noerr-Pennington* doctrine immunized CET from both Diebold's tortious interference and RICO violation claims.[2]

Under *Noerr-Pennington*, a person's act of petitioning the government is presumptively shielded from liability by the First Amendment against certain types of claims. *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511, (1972)); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930, 931 (9th Cir. 2006) (applying *Noerr-Pennington* to bar a RICO violation claim); *Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp.*, 297 F. App'x 773, 779 (10th Cir. 2008) (holding that *Noerr-Pennington* can provide immunity from liability arising from a tortious

---

[2]     We note that other circuits have held that the act of filing a lawsuit, even one which is frivolous, does not by itself constitute an act of "extortion" under the Hobbs Act, 18 U.S.C. § 1951(b)(2), and therefore cannot constitute a predicate act under RICO. *See, e.g., Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004). Treating meritless litigation as a form of extortion punishable under RICO would substantially chill even valid court petitioning, as it could subject almost any unsuccessful lawsuit or set of lawsuits to a colorable claim of a RICO violation. *Deck*, 349 F.3d at 1258.

interference claim). To overcome this presumptive immunity, a plaintiff must establish that the defendant's instigation of litigation was merely a "sham." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (*PRE*). This two-part test requires the plaintiff to show not only that the litigation was objectively baseless, but also that the defendant subjectively intended to harm the plaintiff through the abuse of a governmental process itself, as opposed to harms flowing from the outcome of that process. *See id.*

The district court found that Diebold established the first, but not the second prong of the *PRE* sham litigation test. In an oral ruling, the district court held that Diebold successfully alleged objective baselessness based on the district court's own analysis of CET's patent claims as ineligible under § 101, and "[Diebold's] allegations that [CET]'s litigation conduct was solely designed to engender settlement" with Diebold's customers. J.A. 687–89. However, the district court also determined that Diebold had not shown CET subjectively intended to harm Diebold through its instigation of litigation, as required under prong two of the *PRE* test. *Id.* Although we agree with the district court's ultimate conclusion regarding CET's immunity, we find instead that Diebold's allegation fails the *first* prong of the *PRE* test, and thus the district court's analysis under the second prong was unnecessary.

Under the first prong, a "sham" lawsuit must be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998) (quoting *PRE*, 508 U.S. at 50). Given the focus on the act of filing the complaint as the actionable event, CET's infringement suits, though unsuccessful, were not objectively baseless. This is because the state of the law of § 101 was deeply uncertain at the time CET filed its complaints against Wells Fargo and

PNC in 2012. *Compare Ultramercial, Inc. v. Hulu, LLC*, 657 F.3d 1323, 1327–28 (Fed. Cir. 2011) (subsequently vacated), *with Dealertrack*, 674 F.3d at 1333–35. *See also CLS Bank Int'l v. Alice Corp. Pty Ltd.*, 717 F.3d 1269, 1273 (Fed. Cir. 2013) (en banc), *cert. granted*, 134 S. Ct. 734 (2013), *and aff'd*, 571 U.S. __, 134 S. Ct. 2347 (2014). Under these circumstances, we cannot conclude that as a matter of law, no reasonable litigant in 2012 could have expected success on at least one of CET's claims.

The Supreme Court has held that "even unsuccessful but reasonably based suits advance some First Amendment interests," and therefore should receive protection under the First Amendment. *BE & K*, 536 U.S. at 532. Although we conclude the claims of CET's asserted patents are invalid under § 101, we decline to find CET's infringement suits against Wells Fargo and PNC to be objectively baseless at the time they were filed. Therefore, since the act of filing its suits was shielded from liability by the *Noerr-Pennington* doctrine, the district court correctly dismissed Diebold's tortious interference and RICO violation claims against CET.

CONCLUSION

We affirm the district court's grant of PNC's motion to dismiss under FRCP 12(b)(6) on the ground that the claims of CET's asserted patents are invalid as patent-ineligible under § 101. Because CET's infringement suits against Wells Fargo and PNC were not objectively baseless, we also affirm the district court's dismissal of Diebold's tortious interference and RICO violation claims. Finally, because the claims of CET's asserted patents are invalid under § 101, we need not reach the district court's dismissal of Diebold's request for a declaratory judgment of noninfringement and invalidity.

**AFFIRMED**

## COSTS

No costs.