APOLLO FINANCE, LLC, Plaintiff,

v.

CISCO SYSTEMS, INC., Defendant.

2:15-CV-9696 RSWL (PJWx)

United States District Court,
C.D. California.

Signed June 7, 2016

Steve P. Hassid, Partners Law Group Inc., Long Beach, CA, Arik Shafir, Law Offices of Gene J. Goldsman, Santa Ana, CA, for Plaintiff.

Adam Robert Alper, Kirkland and Ellis LLP, San Francisco, CA, Justin Singh, Michael W. De Vries, Kirkland and Ellis LLP, Los Angeles, CA, Steven Cherny, Kirkland and Ellis LLP, New York, NY, for Defendant.

## ORDER re: DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [12]

HONORABLE RONALD S.W. LEW, Senior United States District Judge

Now before this Court is Defendant Cisco Systems Inc.'s ("Defendant") Motion to Dismiss for Failure to State a Claim [12] ("Motion"). Defendant seeks a complete dismissal of Plaintiff Apollo Finance, LLC's ("Plaintiff") Amended Complaint. The present Motion arises from a patent infringement action brought by Plaintiff against Defendant. Plaintiff alleges that Defendant has directly infringed, and continues to directly infringe, Plaintiff's pat-

ent: U.S. Patent No. 8,435,038 ("'038 Patent" or "the Patent") by producing, using, selling and/or offering for sale certain products without the authority of Plaintiff. For the reasons discussed below, this Court **GRANTS** Defendant's Motion, without leave to amend.

## I. BACKGROUND

### A. Factual Background

On May 7, 2013, the United States Patent and Trademark Office ("USPTO") issued the '038 Patent, entitled "METHODS AND SYSTEMS FOR TEACHING A PRACTICAL SKILL TO LEARNERS AT GEOGRAPHICALLY SEPARATE LOCATIONS." Compl. ¶ 7, ECF No. 1. The '038 Patent claims "among other things, a method for teaching a practical skill to a plurality of learners at geographically separate locations and includes receiving, for each learner, a video feed generated by a camera at the learner's location." Id. at ¶ 11.

Plaintiff is the assignee and owner of all rights, title, and interest in the '038 Patent. Id. at ¶ 8. The inventors of the '038 Patent assigned their entire right, title, and interest in the Patent to Plaintiff on March 26, 2007, which assignment was subsequently recorded with the USPTO. Id. at ¶ 9. Plaintiff alleges Defendant practices the methods as claimed by the '038 Patent through the production, use, and sale of the "Cisco WebEx product" and related products (collectively "Accused Products"). Id. at ¶ 12.

### B Procedural Background

On December 17, 2015, Plaintiff filed its Complaint [1]. On February 12, 2016, Defendant filed its Motion to Dismiss for Failure to State a Claim [12]. On February 23, 2016, Plaintiff filed its Opposition [20]. On March 1, 2016, Defendant filed its Re-

ply [21]. The motion was set for hearing on March 15, 2016. The motion was found suitable for decision without oral argument and was taken under submission on March 9, 2016 [22].

## II. DISCUSSION

### A. Legal Standards

#### 1. Motion to Dismiss Pursuant to FRCP 12(b)(6)—Failure to State a Claim on Which Relief May be Granted

Federal Rules of Civil Procedure Rule 8 requires that a complaint allege enough factual matter that, taken as true, would entitle the plaintiff to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. Mere labels and conclusions are insufficient to give fair notice and "a formulaic recitation of the elements of a cause of action will not do." Id.

When a complaint falls short of the Rule 8 requirement, it is properly dismissed under Federal Rules of Civil Procedure Rule 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right of relief above a speculative level." Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 995 (9th Cir.2014) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

This district has examined the application of Iqbal and Twombly's plausability standard to direct patent infringement actions such as the present matter. See Medsquire LLC v. Spring Medical Systems Inc., No. 2:11–cv–04504–JHN–PLA,

2011 WL 4101093 at *2 (C.D.Cal. Aug. 31, 2011). In patent cases, "with regard to [a] direct infringement claim, [a] court need not accept as true conclusory legal allegations cast in the form of factual allegations." Id.

### 2. Patent Eligibility Under 35 U.S.C. § 101

■■ Patent-eligibility is a question of law. OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362 (Fed.Cir.2015). Courts may address whether a patent is eligible under the Patent Act, pursuant to § 101, through a motion to dismiss. See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A., 776 F.3d 1343 (Fed.Cir.2014) (affirming district court's grant of a motion to dismiss based on a § 101 analysis).

■■ Section 101 of the Patent Act defines patentable subject matter as: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has long held that this provision contains an important implicit exception. Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 U.S. 66, 132 S.Ct. 1289, 1293, 182 L.Ed.2d 321 (2012). "[L]aws of nature, natural phenomena, and abstract ideas" are not patentable. Id. (citing Diamond v. Diehr, 450 U.S. 175, 185, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981)); see also Bilski v. Kappos, 561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010). The Supreme Court noted "[p]henomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." Mayo, 132 S.Ct. at 1293 (citing Gottschalk v. Benson, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972)). "[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." Id. The Supreme Court has explained that the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the [idea] to a particular technological environment' or adding 'insignificant postsolution activity.' " Bilski, 561 U.S. at 610–611, 130 S.Ct. 3218 (citing Diamond, 450 U.S. at 191–192, 101 S.Ct. 1048).

■ At the same time, the Supreme Court "tread[s] carefully in construing this exclusionary principle lest it swallow all of patent law." Mayo, 132 S.Ct. at 1293. At some level, "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." Id. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. See Diamond, 450 U.S. at 187, 101 S.Ct. 1048. "[A]pplication[s] of such concepts 'to a new and useful end,' we have said, remain eligible for the monopoly granted under our patent laws." Alice Corp. Pty. Ltd. v. CLS Bank Intern., — U.S. ——, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014) (citing Gottschalk, 409 U.S. at 67, 93 S.Ct. 253.).

■ The U.S. Supreme Court has set forth a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." Alice, 134 S.Ct. at 2355 (citing Mayo, 132 S.Ct. at 1289). First, the court determines whether the claims at issue are directed to one of those patent-ineligible concepts mentioned above. Id. If so, then the second step requires the court to search for an "inventive concept" by considering the elements of each claim—both individually and as an ordered combination—"to determine whether the additional elements 'transform the nature of the claim' into a patent-

eligible application." Id. (citing Mayo, 132 S.Ct. at 1297–98). If the claims at issue are directed to a patent-ineligible concept and the elements of each claim do not transform it into a patent-eligible application, then the claims are patent-ineligible under 35 U.S.C. § 101. See id. at 2355, 2360. The Supreme Court has described step two of this analysis as a search for an "inventive concept," meaning an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Mayo, 132 S.Ct. at 1294.

## B. Analysis

### 1. Plaintiff's Pleadings Fail to Meet the Twombly/Iqbal Standard

■ This Court finds Plaintiff's Complaint [1] fails to meet the pleadings standard set forth in Twombly and Iqbal, and thus should be dismissed for failure to state a plausible claim for relief. Plaintiff's Complaint merely alleges that Defendant has "directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '038 Patent by producing, using, selling and/or offering for sale in the United States, including in this Judicial District, the Accused Products, without the authority of [Plaintiff]." Compl. ¶ 15, ECF No. 1.

"[M]ost courts have, in the wake of Twombly and Iqbal, required some level of specificity" beyond recitation of a patent infringement claim's elements. Wistron Corp v. Phillip M. Adams & Associates, LLC, No. CV–10–4458–EMC, 2011 WL 4079231, at *4 (N.D.Cal. Sept. 12, 2011). In Proxyconn Inc. v. Microsoft Corp., the court granted Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). No. CV–11–1681–DOC–ANx, 2012 WL 1835680, at *4 (C.D.Cal. May 16, 2012). The court reasoned: "it is clear that

Plaintiff's allegations are too conclusory when they merely allege that each Defendant is directly infringing 'by making, using, selling, offering to sell, or importing' technology that infringes Plaintiff's method patent." Id. As in Proxyconn, Plaintiff in the present case simply identifies the allegedly infringing products and parrots the language of a direct patent infringement claim, alleging that Defendant's "producing, using, selling and/or offering for sale" of the "Cisco WebEx product and related products," infringes on the '038 Patent. Compl. ¶¶ 12, 15. Plaintiff provides no further specificity as to its claim or the Accused Products.

In Plaintiff's Opposition [20] to Defendant's Motion to Dismiss, Plaintiff argues that "Plaintiff's complaint specifically identifies [Defendant's] infringing product, stating 'through the use and sale of the Cisco Web-Ex Product and related products, [Defendant] infringes the '038 Patent.'" Opp'n 18:5-8, ECF No. 20. Plaintiff notes, "[p]resumably, [Defendant] knows what its own WebEx product is, leaving one to wonder what more specificity would add additional notice or clarity. [Plaintiff] needs additional information, which it expects to obtain through discovery, to finalize its infringement contentions." Id. at 18:9-14.

The Court finds this argument unpersuasive, and in fact, indicative that Plaintiff is not clear on what the Accused Products are, or how, if at all, they may be infringing on the '038 Patent. As in Proxyconn, Plaintiff does not state a plausible claim for patent infringement by simply identifying the allegedly infringing products and reciting the elements of a patent infringement claim in a conclusory fashion, absent any factual support. Accordingly, this Court **GRANTS** Defendant's Motion to Dismiss [12] on these grounds.

2. The '038 Patent Constitutes Patent Ineligible Subject Matter and is Thus Invalid

a. *Standard of Proof*

██ In Alice, the Supreme Court applied a two-prong test to determine patentable subject matter eligibility: 1) assessing whether the claims are "directed to one of those patent-ineligible concepts"—a law of nature, physical phenomenon or abstract idea, and 2) if so, whether it also claimed an "inventive concept" that "ensure[s] that the patent in practice amounts to significantly more than a patent on the [ineligible concept] itself." 134 S.Ct. at 2355 (citing Mayo, 132 S.Ct. at 1303). In applying Section 101 analysis at the pleading stage, the movant bears the burden of establishing that the claims are patent-ineligible, and the Court will construe the patent claims in a manner most favorable to Plaintiff. See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1349 (Fed.Cir.2014).

Previously, the Federal Circuit and courts in this district have presumed that issued patents are valid, and have required defendants to prove patent-ineligibility by clear and convincing evidence. See Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 131 S.Ct. 2238, 2242, 180 L.Ed.2d 131 (2011); see also Ultramercial, Inc. v. Hulu, LLC, ("Ultramercial I") 722 F.3d 1335, 1342 (Fed.Cir.2013), vacated and remanded on other grounds by WildTangent, Inc. v. Ultramercial, LLC, —— U.S. ——, 134 S.Ct. 2870, 189 L.Ed.2d 828 (2014) (holding that the clear and convincing evidentiary standard applies to Section 101 challenges); CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B., 50 F.Supp.3d 1306, 1314 (C.D.Cal.2014) (citation omitted) (applying clear and convincing evidence standard to Section 101 challenge). However, the appropriateness of attaching a presumption of validity to a patent subject to a Section 101 analysis has been questioned. See Ultramercial, Inc. v. Hulu, LLC ("Ultramercial II"), 772 F.3d 709, 720–21 (Fed. Cir.2014); see also TNS Media Research, LLC v. Tivo Research & Analytics, Inc., No. 11–cv–4039 SAS, 166 F.Supp.3d 432, 446–47, 2016 WL 817447, at *10 (S.D.N.Y. Feb. 22, 2016) (holding that "the presumption of validity—and its concomitant clear and convincing evidence standard—does not apply to section 101 claims." The court reasoned: "because no evidence outside the pleadings is considered in deciding a motion to dismiss . . . it makes little sense to apply a clear and convincing standard—a burden of proof—to such motions." (citation omitted)).

b. *The '038 Patent's claims are directed to an abstract idea.*

██ Identifying whether a claim is "directed to an abstract idea" under step one of the Alice test requires courts to examine the purpose of a challenged claim. See Cal. Inst. Tech. v. Hughes Commc'ns, Inc., 59 F.Supp.3d 974, 991–992 (C.D.Cal.2014) (requiring that a court "identify the purpose of the claim—in other words, what the claimed invention is trying to achieve—and ask whether that purpose is abstract," making the Alice/Mayo step 1 "a sort of 'quick look' test, the object of which is to identify a risk of preemption and ineligibility."). "Although the Supreme Court in Alice identified three categories of ideas that the Court had previously found to be 'abstract'—mathematical principles, fundamental economic practices, and longstanding commercial practices—the Court did not hold that a claim can only be directed to an abstract idea if it falls within one of these categories." Williamson v. Citrix Online, LLC, No. Cv-11-02409-SJO (C.D. Cal. Feb. 17. 2016).

Rather, "[t]he Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' suffi-

cient to satisfy the first step of the Mayo/Alice inquiry." Enfish, LLC v. Microsoft Corp., No. 2015–1244, 822 F.3d 1327, 1334, 2016 WL 2756255, at *4 (Fed. Cir. May 12, 2016). However, the Supreme Court has noted that "if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on ... a computer,' that addition cannot impart patent eligibility ... Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e] that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself." Alice, 134 S.Ct. at 2358 (citing Mayo, 132 S.Ct. at 1297).

Nonetheless, the Federal Circuit recently discussed in Enfish that it does "not read Alice to broadly hold that all improvements in computer-related technology are inherently abstract, and, therefore, must be considered at step two. Indeed, some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as a chip architecture, an LED display, and the like. Nor do we think that claims directed to software, as opposed to hardware, are inherently abstract and therefore only properly analyzed at the second step of the

Alice analysis. Software can make non-abstract improvements to computer technology just as hardware improvements can." 822 F.Supp.3d at 1335, 2016 WL 2756255, at *4.

■ "Notwithstanding the difficulties inherent in applying Section 101, at least one relatively settled rule has emerged: claims that 'improve the functioning of the computer itself' or 'effect an improvement in any other technology or technological field' may provide an inventive concept sufficient to overcome the risk of preemption inherent in claiming an abstract idea." Williamson, cv-11-02409 SJO (JEMx) (C.D. Cal. Feb. 17, 2016) (citing Alice, 134 S. Ct. At 2359 (citations omitted)). In fact, this district has held "[t]hat generic computer technology allow[ing] for a more efficient process does not confer patent eligibility." Wolf v. Capstone Photography, Inc., No. 13–cv–09573, 2014 WL 7639820, at *13 (C.D.Cal. Oct. 28, 2014).

■ Here, the Court finds that the claims of the '038 Patent are directed to the abstract concept of teaching practical skills to learners at geographically separate locations over the internet.[1] A review of the independent and method claims reveal that they are wholly directed to this abstract concept.[2] Thus, it is clear to this

1. In support of this finding, the Court notes the Abstract of the '038 Patent describes the invention as follows: "A method for teaching a practical skill to a plurality of learners at geographically separate locations includes receiving, for each learner, a video feed generated by a camera at the learner's location. The video feed depicts at least an subject on which the learner is demonstrating the practical skill. The teacher simultaneously displays the video feeds for the plurality of learners on a display screen at a location of the teacher. One or more learners are allowed to submit questions to the teacher that are not immediately conveyed to the other learners. The teacher is allowed to select one of the learners having a question for individualized instruc-

tion, and to establish a private communication channel between the teacher and the selected learner." U.S. Patent No. 8,435,038 B2 (filed Oct. 17, 2006), Compl. Ex. A ('038 Patent, "Abstract"), ECF No. 1-1.

2. Claim 1 recites a "method for teaching a practical skill to a plurality of learners at geographically separate locations, comprising [of]: receiving at a teacher's computer system, for each learner, a video feed generated by a camera at the learner's location ... simultaneously displaying two or more of the video feeds on a display screen associated with the teacher's computer system ... receiving and displaying at the teacher's computer system one or more private questions to the teacher

Court that the '038 Patent, "[s]horn of its implementation-specific fleece," Open Text S.A. v. Box, Inc., 78 F.Supp.3d 1043, 1047 (N.D.Cal.2015), is directed at the specific purpose of creating a virtual, interactive learning environment. Furthermore, courts have repeatedly found similar concepts to be abstract ideas. See Williamson, 11-cv-02409 SJO (JEMx) (C.D. Cal. Feb. 17, 2016) (finding the concept of creating a virtual, interactive learning environment via computer and internet technology to be "abstract" for purposes of step one of a Section 101 analysis); see also IpLearn, LLC v. K12, Inc., 76 F.Supp.3d 525, 533 (D.Del.2014) (finding claims with several computer-aided steps such as "analyzing [ ] test results," "allowing access to areas of a subject on the Internet," and "strong the learner's materials" were all directed to the abstract idea of "instruction, evaluation, and review"); IpLearn–Focus, LLC v. Microsoft Corp., No. 14–cv–00151–JD, 2015 WL 4192092, at *5 (N.D.Cal. July 10, 2015) (finding claims with elements including "displays," "imaging sensors," and monitoring over a network were directed to the abstract idea of teaching, or the concept of a monitored response to presentations). Finally, Plaintiff concedes that the '038 Patent is "[a] method for teaching a practical skill to a plurality of learners at geographically separate locations." Compl. Ex. A, ECF No. 1-1; see also Opp'n 11-12. This Court finds that the subject matter of

the '038 Patent constitutes an abstract idea under 35 U.S.C. § 101.

### c. The claims' limitations fail to add an "inventive concept."

▮▮▮▮ Having determined that the claims of the '038 Patent are directed to the abstract idea of teaching a practical skill to multiple learners at geographically separate locations, the Court now "examine[s] the limitations of the claims to determine whether the claims contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." Ultramercial II, 772 F.3d at 715 (quoting Alice, 134 S.Ct. at 2357). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' " Alice, 134 S.Ct. at 2357 (quoting Mayo, 132 S.Ct. at 1297). "Those 'additional features' must be more than 'well-understood, routine, conventional activity.' " Ultramercial II, 772 F.3d at 715 (quoting Mayo, 132 S.Ct. at 1298). The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." Alice, 134 S.Ct. at 2358.

Plaintiff points to limitations on the claims of the '038 Patent and suggests that those limitations take the claims out of the abstract field of virtual internet learning. Opp'n 11-12. Plaintiff argues its patent "features the use of private instruction concurrently with group instruction," with-

---

... allowing the teacher to select one of the learners for individualized instruction ... wherein the private questions can be submitted by one or more selected learners via a text message, an audio or a video ... wherein the teacher responds to the one or more selected learners by a text message, audio or video by establishing a private video or audio communication channel ... wherein the teacher broadcasts the text, audio or video messages to a group of the selected learners by allowing the communication channel to be non-private

... wherein allowing the teacher to store the video feeds, annotating the stored video feeds and selectively transmit the annotated stored video feed to one or more selected learners." U.S. Patent No. 8,435,038 B2 (filed Oct. 17, 2006), Compl. Ex. A, ECF No. 1-1. The court notes that the additional independent claims and method claims are routine, non-novel, and do not transform the concept into a non-abstract idea for purposes of step 1 of the Alice/Mayo test.

in which a teacher can privately respond to a message sent by a student. However, this Court finds the steps of the asserted claims comprise the abstract concept of creating an interactive, real-time learning environment. For example, the method claims involve allowing students to send video, audio or text messages to the instructor through a private communication channel, and allowing the teacher to respond to that student privately, or to open the communication channel and enable a non-private response. The teacher may store and annotate video graphics, and may transmit the annotated video feed to one or more of the learners for display on their devices at their respective locations.

This Court finds that none of these limitations / "additional features" change the *purpose* of the claims, which is the proper inquiry under the law. Further, Plaintiff does not appear to, nor does it claim to have invented any specialized technology to perform these functions. Plaintiff simply uses routine, established computer and internet technologies to implement its abstract idea of remote, interactive instruction. Accordingly, Plaintiff has shown no " 'inventive concept,' " meaning an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo*, 132 S.Ct. at 1294; see *Cogent Med., Inc. v. Elsevier Inc.*, 70 F.Supp.3d 1058, 1064 n. 3. (N.D.Cal.2014) (noting that "[i]t is important to distinguish novelty and obviousness from the 'inventive feature' inquiry required by the Supreme Court in *Alice*.").

Plaintiff has failed to meaningfully identify any factual disputes as to the key terms of the Patent so as to warrant deferment of this Court's decision on the '038 Patent's eligibility prior to further claim construction. Further, it is not clear to this Court how further briefing on the exact functioning of the system would persuade this Court otherwise, as the claims and methods involved are routine, non-novel, clear and obvious practices that are understood by this Court. Upon review of the '038 Patent, Defendant's Motion, and all relevant papers, the Court finds the '038 Patent is ineligible under 35 U.S.C. § 101. Defendant has met its burden of proving that the '038 Patent is invalid as a matter of law, and thus, the Court **GRANTS** Defendant's Motion to Dismiss [12].

### III. CONCLUSION

Based on the foregoing, this Court **GRANTS** Defendant's Motion [12], without leave to amend.

The Clerk shall close this action.

**IT IS SO ORDERED.**