JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE
Now before the Court is the motion for judgment on the pleadings filed by Defendant Facebook, Inc. ("Facebook"). Having carefully reviewed the parties' papers, relevant legal authority, and the record in this case, the Court hereby GRANTS Facebook's motion for judgment on the pleadings.
BACKGROUND
Facebook moves for judgment on the pleadings on the basis that Silver State Intellectual Technologies, Inc.'s ("Plaintiff") patent infringement claims must fail as a matter of law because the two asserted patents, United States Patent Nos. '165 and '117, are invalid under 35 U.S.C. section 101 (" Section 101") for lack of patent-eligible subject matter as interpreted by the Alice court. Alice Corp. Pty. Ltd. v. CLS Bank Int'l , --- U.S. ----, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) (" Alice "). The '165 and '117 patents are designed to improve the sharing of location-based information for people with personal communication devices. To improve the sharing of location-based information, a system receives from the user's mobile device the location of the user. The system stores that location data, along with other information about the user and the user's location, in a user-specific space. Plaintiff contends that this system accurately determines the user's location and allows it to be shared with select users of the system. Facebook, however, contends that the asserted claims are directed to the abstract idea of separately storing and then selectively sharing location-based information, which are mental processes that have been performed by humans *1044 for decades. Facebook also asserts that the patent does not provide any technological innovation that would transform this abstract idea into a patent-eligible concept, thereby failing to meet the Alice standard.
The Court shall address additional facts as necessary in the remainder of this Order.
ANALYSIS
A. Applicable Legal Standards.
A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the claims asserted in the complaint. A Rule 12(c) motion is "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ross v. U.S. Bank Nat'l Ass'n , 542 F.Supp.2d 1014, 1023 (N.D. Cal 2008). Judgment on the pleadings should not be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "For purposes of the motion, the allegations of the non-moving party must be accepted as true ... Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc. , 896 F.2d 1542, 1550 (9th Cir. 1990).
To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. The requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." Phonometrics, Inc. v. Hospitality Franchise System, Inc. , 203 F.3d 790, 794 (Fed. Cir. 2000).
B. Patent Eligibility.
1. Principles of Patent Eligibility and Abstractness.
Under Section 101, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Notwithstanding the broad scope of Section 101, there are three important and judicially-created exceptions to patentability: "laws of nature, physical phenomena, and abstract ideas." Diamond v. Chakrabarty , 447 U.S. 303, 309, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980) ; see also Ass'n for Molecular Pathology v. Myriad Genetics, Inc. , 569 U.S. 576, 589, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013). These principles are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." Mayo Collaborative Servs. v. Prometheus Labs., Inc. , 566 U.S. 66, 71, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012). " '[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws." Alice , 134 S.Ct. at 2354 (citing Mayo , 566 U.S. at 71, 132 S.Ct. 1289 ).
Not all inventions involving an abstract concept are barred from patentability, however. The Supreme Court in Alice affirmed the approach set out in Mayo as the test for determining the patent eligibility of an invention involving patent-ineligible subject matter. Id. at 2355-59. The analysis, generally known as the Alice *1045 framework, follows a two-step analysis for distinguishing patents that claim laws of nature, natural phenomenon, and abstract ideas from those that claim patent-eligible applications of those concepts. First, the court must determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. Id. at 2355 ; Mayo , 566 U.S. at 71-72, 132 S.Ct. 1289. If the claims are not directed to an abstract or otherwise patent-ineligible idea, the claims are considered patentable and the inquiry ends. Id. If, however, the court finds the claims are in fact directed to ineligible or abstract ideas, the court must consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible claim. See Alice , 134 S.Ct. at 2355. Step two of the process involves the "search for an 'inventive concept'-i.e. , an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' " Id. (citing Mayo , 566 U.S. at 73, 132 S.Ct. 1289 ). Therefore, "application[s]" of an abstract concept "to a new and useful end" remain eligible for patent protection. Gottschalk v. Benson , 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972).
Although not dispositive of the issue, many courts use the "machine-or-transformation" test as "a useful and important clue" to assess whether some claim is patent-eligible. Bilski v. Kappos , 561 U.S. 593, 604, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010). Under this test, a "claimed process is surely patent-eligible under § 101 if: (1) tied to a particular machine or apparatus; or (2) it transforms a particular article into a different state or thing." Id. at 600, 130 S.Ct. 3218. Beyond the machine-or-transformation test, a reviewing court is obligated to "hew closely to established precedents in this area to determine whether an invention falls within one of the exceptions to § 101's broad eligibility." OIP Technologies, Inc. v. Amazon.com, Inc. , 2012 WL 3985118, at * 4 (N.D.Cal. Sep. 11, 2012) (citing Bilski , 561 U.S. at 593, 130 S.Ct. 3218 ). Also, after the Supreme Court's decision in Alice , "there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." DDR Holdings, LLC v. Hotels.com, LP , 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing Alice , 134 S.Ct. at 2358 ). While claims that "broadly and generally claim 'use of the Internet' to perform an abstract business practice" may not be patentable, claiming an "inventive concept for resolving [a] particular Internet-centric problem, render[s] the claims patent-eligible." Id. at 1258, 1259.
Section 101"does not permit a court to reject subject matter categorically because it finds that a claim is not worthy of a patent." Research Corp. Techs. v. Microsoft Corp. , 627 F.3d 859, 868 (Fed. Cir. 2010). The reason for the exceptions to eligibility rest on the presumption undergirding the patent system, which "represents a carefully crafted bargain that encourages both the creation and the public disclosures of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time." Pfaff v. Wells Elecs., Inc. , 525 U.S. 55, 63, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). "The balance between the interest in motivating innovation and enlightenment by rewarding invention with patent protection on the one hand, and the interest in avoiding monopolies that unnecessarily stifle competition on the other, has been a feature of the federal patent laws since their inception." Id. Monopolization of the tools of abstract ideas through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby *1046 thwarting the primary objective of the patent laws. Alice , 134 S.Ct. at 2354. At the same time, however, courts must "tread carefully in construing this exclusionary principle 'lest it swallow all of patent law.' " Appistry, Inc. v. Amazon.com, Inc. ("Appistry I") , 2015 WL 4210890, at *1 (W.D. Wash. July 9, 2015) (Pechman, J.) (citing Alice , 134 S.Ct. at 2354 ).
2. Application of Section 101 to the Patents-in-Suit.
a. Identification of Claims Directed to an Abstract Idea.
Although abstract ideas are not patent-eligible subject matter, neither the Supreme Court nor the Federal Circuit has "established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the Alice inquiry." Enfish, LLC v. Microsoft Corp. , 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing Alice , 134 S.Ct. at 2357 (noting that the Court "need not labor to delimit the precise contours of the 'abstract ideas' category in this case") ). Rather, instead of setting forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the Alice framework, courts are tasked with making the evaluation whether any particular claims are directed to a patent-ineligible abstract idea by "compar[ing] claims at issue to those already found to be directed to an abstract idea in previous cases." Papst Licensing GmbH & Co. KG v. Xilinx Inc. , 193 F.Supp.3d 1069, 1081 (citing Enfish , 822 F.3d at 1334 ). In the context of computer-implemented inventions, "courts have considered whether the claims purport to 'improve the functioning of the computer itself,' which may suggest that the claims are not abstract, or instead whether 'computers are invoked merely as a tool' to carry out an abstract process." Id. at 1081 (citing Alice , 134 S.Ct. at 2359 ; Enfish , 822 F.3d at 1334 ).
In addition, courts tasked with the analysis of the first step evaluation of abstractness may consider "whether the claims are, in essence, directed to a mental process or a process that could be done with pen and paper." Id. at 1082 (citations omitted). "We have previously explained that somewhat (at least facially) similar claims involving the mere collection and manipulation of information do not satisfy Section 101-under either step one or step two." Amdocs (Israel) Limited v. Openet Telecom, Inc. , 841 F.3d 1288, 1300 (2016). "In distilling the purpose of a claim, the Court is careful not to express the claim's fundamental concept at an unduly 'high level of abstraction ... untethered from the language of the claims,' but rather at a level consonant with the level of generality or abstraction expressed in the claims themselves." Papst , 193 F.Supp.3d at 1084 (citations omitted).
In this matter, the Court finds that the asserted claims are directed to the abstract idea of storing and selectively sharing location-related information.
Claim 1 of the '165 Patent reads as follows:
1. A method of providing contact information regarding a user, the method comprising:
allocating a user-specific space in memory accessible over a computer network to a specific user;
associating a mobile communication device with the user;
determining a geographic location of the user by receiving location information provided by a mobile communication device;
storing data indicative of the location of the user in a user-specific space;
receiving from the user, additional data regarding the user, the additional *1047 data being related to the geographic location of the user;
storing the additional data regarding the user in the user-specific space;
receiving from the user an access list of possible requesters of the data and the additional data;
storing the access list of possible requesters of the data and the additional data in the user-specific space; and
providing the data indicative of the location of the user and the additional data regarding the user to possible requesters on the access list.
(See Declaration of Lowell D. Mead ("Mead Decl.") Ex. D, Dkt. No. 49.)
Claim 1 of the '117 Patent reads as follows:
1. A location relevant server system comprising:
a server receiving information indicating a location of a mobile communication device, and data related to the proximity of the location of the mobile communication device, the server being connected to the network;
memory accessible to the server, the memory storing information relating to a user of the mobile communication device, the memory including data concerning the location of the mobile communication device, personalized data regarding points of interest to the user of the mobile communication device, and data concerning establishment of communication with the mobile communication device; and
wherein the server executes a program allowing access to the memory storing the information relating to the user of the mobile communication device, the program allowing different people different access to the memory based on the identity of the user.
(See Mead Decl. Ex. E.)
The Court finds that the asserted claims are directed to the abstract idea of storing and selectively sharing location-based information. This is a relatively simple and abstract idea, one which can be carried out using a pen and paper. Following the reasoning in Alice , the Court finds the asserted claims are similar to the abstract idea of hedging because they are undisputably well-known functions. See Alice , 134 S.Ct. at 2356 ("Specifically, the claims described the basic concept of hedging, or protecting against risk. The court explained that 'hedging is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class.' "). The claims are in practical effect patenting the "idea itself" and using computer components to carry out the abstract process. Id. at 2354. The Court thus finds that the claims of the patents-in-suit are directed to a basic concept of storing and selectively sharing location-based information. Because these are undisputedly well-known functions that humans have traditionally performed for decades, these claims are directed to an abstract idea.
b. Evaluation of Abstract Claim for a Limiting Inventive Concept.
Step two of the Alice analysis requires evaluation of abstract claims for a limiting inventive concept. "A claim drawn to an abstract idea is not necessarily invalid if the claim's limitations-considered individually or as an ordered combination-serve to "transform the claims into a patent-eligible application." Papst , 193 F.Supp.3d at 1082 (citing Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A. , 776 F.3d 1343, 1348 (Fed. Cir. 2014) ). This second step requires that the Court evaluate whether the claim contains "an element or combination of elements that ensures that the patent in practice amounts to significantly more than a patent upon the abstract idea itself." Id. at 1083 (citing Alice , 134 S.Ct. at 2355 ). Simply because a patent invokes *1048 the use of a computer does not transform an abstract idea into a patent-eligible invention: "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than the performance of 'well-understood, routine, [and] conventional activities previously known to the industry." Content Extraction , 776 F.3d at 1347-48 (quoting Alice , 134 S.Ct. at 2359 ). It is "well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where those components simply perform their "well-understood, routine, conventional" functions. In re TLI Communications LLC Patent Litig. , 823 F.3d 607, 611 (Fed. Cir. 2016). "An inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." BASCOM Global Internet Servs., Inc. v. AT & T Mobility LLC , 827 F.3d 1341, 1350 (Fed. Cir. 2016).
Here, the Court finds that the subject patents lack any inventive concept that transforms the abstract idea of storing and selectively sharing location-based information into patentable subject matter. The claims do not provide how the claimed methods and systems will specifically execute or apply the fundamentally abstract idea of storing and selectively sharing location-based information. Although Plaintiff points to the specifications to demonstrate how the abstract idea may constitute an inventive concept, a Section 101 analyses must be based on the language of the claims. See Synopsys Inc. v. Mentor Graphics Corp. , 839 F.3d 1138, 1149 (Fed. Cir. 2016). Upon thorough examination of the claims of the patents-at-issue, the Court can discern no inventive concept that transforms the abstract idea of selectively storing and sharing location-based information in the area of personal communication devices into a patent-eligible application of that abstract idea.
An "inventive concept must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." BASCOM Global, 827 F.3d at 1349. Here, the patents do not claim any particular process or concept, but instead rely on computer components to perform conventional activities commonly understood. The claims are not directed to a unique solution to a process specific to computers. The claims are not tied to any particular machine and do not transform any specific idea or article into a different thing, thereby creating an inventive concept to remove it from the realm of the abstract idea. The claims here simply recite the use of generic features, such as entering data into a computer database and organizing it based on some criteria. Id. at 1347-1348. The fact that a known business process is applied to the particular technological environment of the Internet does not render the idea inventive. DDR Holdings, 773 F.3d at 1259 (holding that the patent claims satisfy step two under the Alice framework because the claimed solution is rooted in computer technology and does not merely recite a well-known business practice). The Court, therefore, finds that the subject patents lack any inventive concept that transforms the abstract idea into patent-eligible subject matter.
CONCLUSION
The Court finds that the claims are directed to an abstract idea. See Alice , 134 S.Ct. at 2355. Further, the Court finds that the claims lack any inventive concept that transforms that abstract idea into patentable subject matter. Thus, the claimed system is patent-ineligible under Section 101. Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings.
*1049 A separate judgment shall issue and the Clerk shall close the matter.
IT IS SO ORDERED.